

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | |
|---|---|
| JULIO VALENCIA-LOPEZ, | **MEMORANDUM & ORDER** |
| Petitioner, | 10-CV-02893 (NGG) |
| -against- | |
| UNITED STATES OF AMERICA, | FILED IN CLERK'S OFFICE U S DISTRICT COURT E.D.N.Y. |
| Respondent. | ★ JUN 13 2012 ★ |
| | BROOKLYN OFFICE |

------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

Julio Valencia-Lopez ("Valencia") brings this pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255. Valencia pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841 and 846, and was sentenced by this court to 292 months' imprisonment. Valencia now seeks to vacate his sentence on the grounds that he received ineffective assistance of counsel, in violation of the Sixth Amendment. Valencia argues that his counsel was ineffective because he: (1) failed to object when the Government argued that Valencia's crime involved a higher quantity of heroin than the quantity to which he had admitted at his plea hearing; (2) failed to inform Valencia of his right under Apprendi v. New Jersey, 530 U.S. 466 (2000), to have drug quantity proven to a jury beyond a reasonable doubt; (3) failed to seek withdrawal of Valencia's guilty plea after the Government (a) argued for a higher drug quantity than the quantity to which Valencia had admitted, (b) sought a sentencing enhancement for Valencia's leadership role in his crime, (c) objected to a sentencing reduction for acceptance of responsibility, and (d) sought a sentencing enhancement for obstruction of justice; and (4) wrongly advised Valencia to give a

1

full proffer to the Government regarding his crime rather than admitting only to its bare elements. For the reasons set forth below, Valencia's Petition is DENIED.

## I. BACKGROUND

Valencia was charged on November 8, 2005, with one count of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841 and 846. (A 7-8.[1])

On October 31, 2006, Valencia made a proffer to the Government regarding his drug trafficking activities. (A 85.) During this meeting, he stated that, while he was living in Colombia, he had been paid by a man whom he knew only as "El Tio" to make certain phone calls to a co-conspirator, Johnny Potes, possibly involving drug trafficking. (Id.) Valencia also admitted coming to New York in 2005 on behalf of "El Tio" and giving $500 to a woman who was making a trip to Florida for a drug deal, but denied that he met the woman upon her return to New York or that he had any further participation in that deal. (Id.)

Also prior to Valencia's plea, the Government submitted to the court an unsigned plea agreement containing the Government's estimate of Valencia's United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range. (A 10-15, 17.) Although Valencia had refused to enter into any agreement, the Government indicated that it had submitted the unsigned agreement "as a Pimentel Letter." (A 17.) See United States v. Pimentel, 932 F.2d 1029, 1034 (2d Cir. 1991).[2] The unsigned agreement estimated that Valencia had a base offense level of

---

[1] Citations to "A __" refer to the Joint Appendix the parties filed on Valencia's appeal to the Second Circuit Court of Appeals.

[2] In Pimentel, the Second Circuit urged the Government to "inform defendants, prior to accepting plea agreements, as to the likely range of sentences that their pleas will authorize under the Guidelines," in order to "ensure that guilty pleas indeed represent intelligent choices by defendants." 932 F.2d at 1034. The court recognized, however, that the Government was "under no legal obligation to provide this information." Id. The Government's pre-plea estimates of a defendant's Guidelines range, often referred to as "Pimentel estimates," are typically set forth in the plea agreements themselves or in separate submissions to the court.

2

thirty-four because his crime involved between three and ten kilograms of heroin, see U.S.S.G. § 2D1.1(c)(3), that he was subject to a four-level enhancement as an "organizer or leader of criminal activity that involved five or more participants" ("role enhancement"), U.S.S.G. § 3B1.1(a), and that he was entitled to a two-level reduction for early acceptance of responsibility ("acceptance reduction"), see U.S.S.G. § 3E1.1(a), for a total offense level of thirty-six and a Guidelines range of 188 to 235 months' imprisonment. (A 11.)

On March 14, 2007, Valencia appeared before Magistrate Judge Robert M. Levy[3] and pleaded guilty to the charge in the Indictment without a plea agreement. (A 16-34.) At the plea hearing, the Government stated its belief that Valencia "was involved in the importation and then subsequent distribution of numerous kilograms of heroin" and "that he was a leader in an organization that did so." (A 23.) After Judge Levy noted that Valencia faced a statutory minimum of ten years' imprisonment for this crime, Valencia's counsel asserted that if Valencia was found *not* to have a supervisory role in the distribution of heroin—as was Valencia's position—he would be eligible for a "safety valve" under the Guidelines and could thus be sentenced below the ten-year minimum. (Id.) See 18 U.S.C. 3553(f); U.S.S.G. § 5C1.2.[4] Judge Levy then asked Valencia to describe his participation in the alleged conspiracy. (A 30.) Consistent with his October 31, 2006, proffer to the Government, Valencia described himself as a mere a conduit for instructions from others in the drug organization: he stated that he was "told to make a call in Colombia [ ] to New York to give instructions to a person to . . . pick up

---

[3]   Valencia consented to having a plea taken before Judge Levy. (Consent Order, United States v. Valencia-Lopez, No. 05-CR-0841 (NGG) (E.D.N.Y. Mar. 14, 2007), Docket Entry # 16.)

[4]   Section 5C1.2 of the Guidelines provides that "the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5)," which include that "the defendant was not an organizer, leader, manager, or supervisor of others in the offense," and that the "defendant [ ] truthfully provided to the Government all information and evidence the defendant ha[d] concerning the offense." Moreover, U.S.S.G. § 2D1.1(b)(16) provides for a two-level sentencing reduction for defendants who are entitled to a safety valve under § 5C1.2.

something," and that he then instructed that person over the phone "[t]o call a beeper number" belonging to a second person, who would then "deliver some heroin to" the first person. (A 30, 32-33.) Valencia admitted that one kilogram or more of heroin was involved. (A 33.) Judge Levy accepted Valencia's guilty plea and adjourned the hearing. (A 34.)

On June 8, 2007, the Probation Department issued a Pre-Sentence Report ("PSR"). (PSR, United States v. Valencia-Lopez, No. 05-CR-0841 (NGG) (E.D.N.Y. June 8, 2007).) The PSR concluded that Valencia was involved in the distribution of 4.49 kilograms of heroin and, based on that quantity, calculated a base offense level of thirty-four. (Id. at 6.) The PSR then applied a four-level enhancement for Valencia's leadership role and a three-level reduction for acceptance of responsibility, for a total offense level of thirty-five and a resulting Guidelines range of 168 to 210 months' imprisonment. (Id. at 6, 8, 12.)

Valencia filed a letter to the court objecting to the PSR's application of a four-level role enhancement and arguing that, because he had not played a supervisory role in the drug activities and had truthfully provided to the government all the information he had concerning the offense, he was eligible for a safety valve, see U.S.S.G. § 5C1.2, and a resulting two-level sentencing reduction, see id. § 2D1.1(b)(16), for a total offense level of twenty-nine (once Valencia was also credited with a three-level acceptance reduction). (A 36.) Valencia alleged that while he "did relay information to Johnny Potes about who to call to consummate a drug deal," Valencia "was only a conduit for this information." (Id.) Valencia did not, however, object to the 4.49-kilogram drug quantity alleged in the PSR.

The Government filed a letter in response on October 22, 2007, requesting that Valencia's sentencing be rescheduled and that the court conduct a hearing pursuant to United States v. Fatico, 603 F.2d 1053 (2d Cir. 1979) ("Fatico hearing"), to resolve disputed issues

4

related to Valencia's sentence. (A 38-39.) This court granted the Government's request and scheduled a Fatico hearing. (See Minute Entry, United States v. Valencia-Lopez, No. 05-CR-0841 (NGG) (E.D.N.Y. Oct. 26, 2007), Docket Entry # 22.)

On January 28, 2008, three days before the Fatico hearing, the Government filed another letter providing "a summary of the disputed sentencing issues" for the hearing, which included: (1) the quantity of heroin for which Valencia was accountable under U.S.S.G. § 2D1.2; (2) whether Valencia was eligible for a safety valve under U.S.S.G. § 5C1.2, an issue that "subsume[d]" the issues of Valencia's role in the offense and whether he had truthfully provided all of the information to the Government regarding his offense conduct; (3) whether Valencia was entitled to a two-level acceptance reduction under U.S.S.G. § 3E1.1; and (4) whether Valencia was subject to a two-level enhancement for obstruction of justice ("obstruction enhancement") under U.S.S.G. § 3C1.1. (A 63-69.) The Government argued that Valencia was responsible for over thirty kilograms of heroin and that, because he had not been truthful to the Government about this quantity and about his leadership role in the drug activities, he was entitled to neither the safety valve nor an acceptance reduction and was subject to an obstruction enhancement. (A 64-67.) The Government calculated a new offense level of forty-four, using a base offense level of thirty-eight plus a four-level role enhancement and a two-level obstruction enhancement. (A 67.) The resulting Guidelines range was life imprisonment. (A 67-68.)

This court held a Fatico hearing on January 31, 2008. (A 98-264.) Cooperating witnesses Johnny Potes and James Cifuentes testified at the hearing. According to their testimony, Valencia was a high-level member of a violent Colombian narcotics trafficking

5

organization and had coordinated the delivery of more than 120 kilograms of heroin from Colombian sources to United States distributors.[5] (See, e.g., A 139, 146-47, 158-59, 219-20.)

On February 13, 2008, Valencia made a second proffer to the Government and gave a version of his involvement in drug trafficking that was quite different from the version he had provided in his October 31, 2006, proffer. (A 85.) According to the Government, Valencia conceded at that meeting "that he had deliberately omitted material facts and also overtly lied about others because of his fear of violent retribution against both him and his family." (Id.) Among other things, Valencia admitted that he had in fact met with the female drug courier to whom he had given $500 upon her return to the New York; that the narcotics he helped bring to the United States were owned by Colombia's powerful Norte del Valle drug cartel; that he was involved with the importation and distribution of more than thirty kilograms of heroin and "probably" between 120 and 130 kilograms of heroin; and that he had threatened Potes's family to coerce him to repay certain debts related to the drug trafficking activities. (A 85-89.)

On February 15, 2008, Valencia's counsel filed a letter in which he again asserted that Valencia was entitled to the safety valve and an acceptance reduction and was not subject to role or obstruction enhancements. (A 71.) Counsel conceded, however, that Valencia's "base offense level [wa]s 38, based on his participation in the trafficking of over 30 kilos of heroin." (Id.) The Government filed a letter in response reiterating that Valencia was entitled to a four-level role enhancement but conceding that an obstruction enhancement was inappropriate. (A 81-93.) Valencia filed a reply responding to some of the Government's arguments and stating that, although he "acknowledged that he was not completely forthcoming during his first proffer session, he ha[d] now answered all of the government's questions truthfully." (A 96.)

---

[5] According to the Government's estimation, 120 grams of heroin represents at least $6,600,000 in wholesale proceeds and approximately 240,000 doses—enough for 657 people to use a dose per day for a year. (A 88.)

6

On March 26, 2008, this court conducted a sentencing hearing. (A 265-92.) The court first found—consistent with Valencia's recent admissions—that Valencia was accountable for thirty kilograms or more of heroin and had a base offense level of thirty-eight. (A 268.) The court then determined: (1) that Valencia had "played a managerial role" in the drug activities and was therefore subject to a role enhancement, but that a two-level rather than a four-level enhancement was appropriate (A 275-76); and (2) that Valencia was not entitled to a reduction for acceptance of responsibility because he "gave an original proffer in which he was not truthful" (A 284). Accordingly, the court calculated a total offense level of forty, resulting in a Guidelines range of 292 to 365 months. (A 285.) After considering the factors set forth in 18 U.S.C. § 3553, the court sentenced Valencia to 292 months' imprisonment (the bottom of the Guidelines range) and five years of supervised release. (A 289-91.)

Valencia appealed his sentence to the Second Circuit Court of Appeals, arguing that this court had erred in denying him a two-level reduction for acceptance of responsibility. United States v. Valencia-Lopez, 312 Fed. App'x 414 (2d Cir. 2009). The Second Circuit affirmed, reasoning that this court's refusal to apply the reduction "was not without foundation" because it had found that Valencia "'gave an original proffer in which he was not truthful about his relevant conduct.'" Id. at 414 (internal quotation marks omitted). Valencia timely filed a petition for writ of certiorari with the United States Supreme Court, which was denied on October 5, 2009. United States v. Valencia-Lopez, 130 S. Ct. 306 (2009).

On June 17, 2010, Valencia filed the instant Petition pursuant to 28 U.S.C. § 2255. (Pet. (Docket Entry # 1).) He seeks to vacate his sentence on the grounds that he received ineffective assistance of counsel, in violation of the Sixth Amendment, because counsel: (1) failed to object when the Government argued that Valencia's crime involved a higher quantity of heroin than the

7

quantity to which he had admitted at his plea hearing; (2) failed to inform Valencia of his right under Apprendi to have drug quantity proven to a jury beyond a reasonable doubt; (3) failed to seek withdrawal of Valencia's guilty plea after the Government (a) argued for a higher drug quantity than the quantity to which Valencia had admitted, (b) sought a sentencing enhancement for Valencia's leadership role in his crime, (c) objected to a sentencing reduction for acceptance of responsibility, and (d) sought a sentencing enhancement for obstruction of justice; and (4) wrongly advised Valencia to give a full proffer to the Government regarding his crime rather than admitting only to its bare elements. The Government filed an opposition (Gov't Opp'n (Docket Entry # 4)); Valencia replied and requested an evidentiary hearing on his claims (Pet. Reply (Docket Entry # 5)).

## II. STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy . . . the Assistance of Counsel for his defence." U.S. Const. amend VI. "The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding," Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012), including at sentencing, see Gardner v. Florida, 430 U.S. 349, 358 (1977). But in order to establish a Sixth Amendment violation based on ineffective assistance of counsel, a petitioner must satisfy the stringent two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). See, e.g., Williams v. Taylor, 529 U.S. 362, 390 (2000).

First, under Strickland's "performance" prong, a petitioner must show that trial counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms." Strickland, 466 U.S. at 688. "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable

8

professional judgment.'" Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 690). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Thus, a court must "not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential downside," or if the attorney otherwise had "a reasonable justification for the decision." Greiner, 417 F.3d at 319 (internal quotation marks omitted).

Second, under Strickland's "prejudice" prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding"; rather, he must show "a probability sufficient to undermine confidence in the outcome." Id. at 693-94.

### III. DISCUSSION

As noted above, Valencia provides four grounds for his ineffective assistance of counsel claim, which the court will address in a different sequence from that which Valencia used in his Petition. For the reasons that follow, Valencia has not established a Sixth Amendment violation.

#### A. Failure to Inform Valencia of His Right under Apprendi to Have Drug Quantity Proven to a Jury Beyond a Reasonable Doubt

Valencia argues that his counsel provided ineffective assistance because he failed to inform Valencia of his right under Apprendi to have drug quantity proven to a jury beyond a reasonable doubt. (Pet. at 23-25; see also id. at 17-19.) The court disagrees.

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the

9

prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. A sentence imposed that fails to comply with this rule violates the Sixth Amendment. See id. at 476.

The Supreme Court expanded upon Apprendi in United States v. Booker, 543 U.S. 220 (2005). In Booker, the Court held that the United States Sentencing Guidelines violated the Sixth Amendment to the extent that they allowed the maximum sentence authorized by a guilty plea or a verdict to be increased based on findings of fact (other than the fact of a prior conviction) made by a judge. See 543 U.S. at 226, 244. In a separate opinion, the Court concluded that the remedy for this problem was to hold unconstitutional the provision of the federal sentencing statute that made the Guidelines mandatory and to sever that provision—as well as another provision that depended upon the Guidelines' mandatory nature—from the U.S. Code, thus "mak[ing] the Guidelines effectively advisory." Id. at 245. By construing the whole of the Guidelines as advisory, the Court "ensure[d] against Apprendi error in particular cases." United States v. Gonzalez, 420 F.3d 111, 129-30 (2d Cir. 2005). After Booker, facts that increase the Guidelines range alone, without increasing the *statutory* maximum, do not violate the rule in Apprendi.

Jumping back a few years prior to Booker, in United States v. Thomas, 274 F.3d 655 (2d Cir. 2001) (en banc), the Second Circuit addressed whether Apprendi permitted a court to impose a sentence beyond the otherwise applicable statutory maximum based on findings concerning the quantity of drugs involved in the defendant's offense when drug quantity was neither mentioned in the indictment nor presented to the jury. Id. at 659. The court held that if the "quantity of drugs involved in a charged crime may be used to impose a sentence above the statutory maximum for an indeterminate quantity of drugs, then the . . . quantity of drugs is an element of

10

the offense that must be charged in the indictment and submitted to the jury." Id. at 660. The court emphasized, however, that "the principle of Apprendi requires quantity to be charged in the indictment and found by a jury *only* in cases where the quantity results in a punishment above a statutory maximum." Id. at 660 n.3 (emphasis added). Thus, "[a]s long as the sentence imposed is not greater than the maximum penalty authorized by statute for the offense charged and (in cases involving a guilty plea) *allocuted by the defendant*, a district court may consider drug quantity for sentencing purposes pursuant to [the Guidelines]." United States v. McLean, 287 F.3d 127, 133 (2d Cir. 2002) (emphasis added); see also United States v. Doe, 297 F.3d 76, 89 (2d Cir. 2002) ("[I]n a guilty plea setting, error may be avoided even absent a fact-finder's beyond a reasonable doubt conclusion as to drug quantity if the defendant has given an allocution that settles the issue of drug quantity." (internal quotation marks omitted)); United States v. Champion, 234 F.3d 106, 110 (2d Cir. 2000); United States v. Logan, Nos. 09-CR-296 & 10-CV-2993 (ADS), 2012 WL 616257, at *16 (E.D.N.Y. Feb. 23, 2012); Medina v. United States, No. 01-CV-2514 (RR), 2002 WL 398803, at *2-3 (E.D.N.Y. Jan. 15, 2002).

Valencia's case is different from cases like Thomas in which drug quantity was not mentioned in the indictment, 274 F.3d at 659, and cases like McLean in which the defendant admitted "only to the non-quantity elements" of the drug offense, 287 F.3d at 134. Valencia admitted at his plea hearing to the fact—alleged in his Indictment—that his crime involved at least one kilogram of heroin, and does not claim that this particular admission resulted from ineffective assistance of counsel. (A 33; Pet. at 19, 21, 23.) By making this admission, Valencia conceded the *only* fact that affected the *statutory maximum* for his offense—which, as a result, was life imprisonment. See 21 U.S.C. § 841(b)(1)(A) ("In the case of a violation of subsection (a) of this section involving[] 1 kilogram or more of a mixture or substance containing a

11

detectable amount of heroin . . . such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . ."). In other words, for the purposes of determining Valencia's *statutory maximum*, Valencia gave "an allocution that settle[d] the issue of drug quantity." Doe, 297 F.3d at 89.

To the extent the court found that Valencia's crime involved more than thirty kilograms of heroin—the fact Valencia claims he admitted only because of counsel's ineffectiveness—that determination mattered only to Valencia's *Guidelines* range. But as a result of Booker's remedial holding rendering the Guidelines effectively advisory, factual findings that affect only a defendant's Guidelines range do not create an Apprendi problem. See Gonzalez, 420 F.3d at 129-30. Under Booker and the Second Circuit's pre-Booker precedents, the fact that Valencia's crime involved more than thirty kilograms of heroin did not result in a sentence "greater than the maximum penalty authorized by the statute for the offense . . . allocuted by the defendant"—life imprisonment—and thus did not need to be proven to a jury beyond a reasonable doubt. McLean, 287 F.3d at 133; see also Thomas, 274 F.3d at 663-64.

For these reasons, Valencia cannot establish either deficient performance or prejudice with respect to counsel's failure to inform him of his Apprendi rights after his plea. See Strickland, 466 U.S. at 688, 694. Once Valencia admitted that his crime involved more than one kilogram of heroin, the statutory maximum for his crime increased to life imprisonment and his Apprendi rights were no longer at issue. Counsel thus had no particular reason to inform Valencia of his Apprendi rights, and was not ineffective for failing to do so.

### B. Failure to Seek Withdrawal of Valencia's Guilty Plea

Next, Valencia argues that his counsel was ineffective for failing to seek withdrawal of his guilty plea. (Pet. at 25-28.) He claims that he was entitled to withdraw his guilty plea

12

because the plea "was not knowing, voluntar[y] or sufficient" in light of certain actions subsequently taken by the Government. (Pet. at 27.) He is incorrect.

Federal Rule of Criminal Procedure 11(d) states that "[a] defendant may withdraw a plea of guilty . . . (2) after the court accepts the plea, but before it imposes a sentence, if (B) the defendant can show a fair and just reason for requesting the withdrawal." This determination "is committed to the discretion of the district judge." Gonzalez, 420 F.3d at 120. "The standard for withdrawing a guilty plea is stringent because society has a strong interest in the finality of guilty pleas." United States v. Doe, 537 F.3d 204, 211 (2d Cir. 2008) (internal quotation marks omitted). "Where a motion to withdraw a plea is premised on involuntariness, the defendant must raise a significant question about the voluntariness of the original plea. A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." Id. (internal quotation marks omitted).

Valencia claims that counsel should have sought withdrawal of his plea when the Government (1) argued for a higher drug quantity than the quantity to which Valencia had admitted, (2) sought a sentencing enhancement for Valencia's leadership role in his crime, (3) objected to a sentencing reduction for acceptance of responsibility, and (4) sought a sentencing enhancement for obstruction of justice. (Pet. at 25-28; Reply at 2-3.) None of these grounds would have supported withdrawal of his plea.

The second and fourth grounds are disposed of easily. Valencia clearly could not have sought withdrawal of his plea based on the Government's decision to seek a role enhancement because the Government included that enhancement in its Pimentel estimate *prior* to his plea (A 11), and stated explicitly at Valencia's plea hearing that it believed he "was a leader in an organization" involved in the distribution of heroin (A 23). Because Valencia was fully

13

informed about this potential enhancement, the Government's decision to continue seeking that enhancement did not render his plea involuntary. See Doe, 537 F.3d at 211; Frazier v. Wilkinson, 842 F.2d 42, 46 (2d Cir. 1988) (where habeas petitioner "was fully informed of the sentencing possibilities, [ ] the denial of leave to withdraw [his] guilty plea did not deprive him of any federally protected right"); United States v. Perez, No. 91-CR-712 (SJ), 1997 WL 27140, at *3 (E.D.N.Y. Jan. 22, 1997) (rejecting defendant's request to withdraw plea where defendant "was informed in Court that the charge carried a sentence from five years to life imprisonment, and answered in the affirmative to his understanding of this fact"). As for the Government's request for an obstruction enhancement, Valencia could not have been prejudiced based on counsel's failure to seek withdrawal of the plea on this ground because the Government eventually withdrew its request. (A 91.)

The more plausible grounds asserted by Valencia for withdrawal of his plea are the Government's post-plea decisions to argue for a higher drug quantity and to object to a reduction for acceptance of responsibility. While acknowledging that he "pleaded guilty without a plea agreement," Valencia argues that the Government improperly departed from its Pimentel estimate (Pet. Reply at 11-12), which had alleged that Valencia's crime involved between three and ten kilograms of heroin and included an acceptance reduction (A 11). Based on these changes in the Government's position, he argues, counsel should have moved for withdrawal of his guilty plea.[6] (See Pet. Reply at 11-12.)

---

[6] Valencia's argument based on counsel's failure to move for withdrawal of his guilty plea at times bleeds into his argument regarding his Apprendi rights. (See, e.g., Pet. at 26 (arguing that because "[t]he district court [ ] did not inform Valencia-Lopez of his right to have a jury [determine] the statutory quantity of the drugs, [ ] Valencia-Lopez['s] guilty plea cannot be deemed to be knowing, voluntar[y], or sufficient").) As indicated above (see Part III.A, supra), Valencia does not claim that his admission to a crime involving at least one kilogram of heroin was made unknowingly or involuntarily, and this is the only fact that mattered with respect to his Apprendi rights. Thus, any failure to inform Valencia of those rights has nothing to do with the voluntariness of his plea.

14

Valencia's claim calls for a discussion of two relatively recent Second Circuit cases that are in some tension with one another: United States v. Palladino, 347 F.3d 29 (2d Cir. 2003), and United States v. Habbas, 527 F.3d 266 (2d Cir. 2008). See generally United States v. MacPherson, 590 F.3d 215, 220-22 (2d Cir. 2009) (Newman, J., concurring) (discussing the tension between these decisions).

In Palladino, upon which Valencia principally relies, the court addressed "whether the Government violated the language of [a] plea agreement when it sought a six-level sentencing enhancement on the basis of information that was known to it at the time of the agreement, but was not reflected in the estimated offense level in the plea agreement." 347 F.3d at 33. The court noted that the Government had made clear that the Guidelines estimate set forth in the agreement was not binding on the Government and that a change in the Government's Guidelines calculation would not entitle the defendant to withdraw his plea. See id. But the court found that the "defendant had a reasonable expectation that the Government would not press the Court for an enhanced offense level in the absence of new information," particularly in light of the agreement's statements (1) that the Government's estimate "was 'based on information known to the [Government] at [the time of the plea]'"; and (2) that the Government would take no position as to the appropriate Guidelines range and make no motion for an upward departure. Id. at 33-34 (alterations in original). The court was also concerned that the Government's new position on sentencing resulted "simply because a new Assistant United States Attorney had taken over the case and adopted a different view of the matter." Id. at 34. The court thus concluded that, "[i]n the circumstances presented, . . . the Government's actions were inconsistent with the language and the spirit of the plea agreement," and remanded to the district court to permit the defendant to withdraw his plea. Id. at 30.

15

In Habbas, relied upon by the Government, the court held on similar but distinguishable facts that the Government had not breached a plea agreement by arguing for a more onerous Guidelines range than it had provided in its Pimentel estimate. See Habbas, 537 F.3d at 269-72. The court "reject[ed] the defendant's contention that Palladino established a broad rule, categorically prohibiting the government from deviating from a Pimentel estimate, absent newly discovered facts." Id. at 272. Rather, the problem in Palladino was "the combination of the passages of the plea agreement conferring assurance that the government would not advocate for a sentence higher than the estimate, with the aura of unfair dealing that underlay the government's change of position." Id. at 272 n.1; see also MacPherson, 590 F.3d at 221 (Newman, J., concurring). Unlike in Palladino, the court reasoned, the agreement in Habbas "included language clearly indicating [the Government's] intention and reservation of right to seek a sentence higher than the Guidelines range"; there was "no suggestion that the government acted in bad faith, either by intentionally low-balling its initial estimate, intending to increase it subsequently, or in its subsequent advocacy of a higher range"; and the Government had not changed its position "so dramatically as to raise doubts whether the defendant could reasonably be seen to have understood the risks of the agreement." Habbas, 537 F.3d at 271.

With these precedents in mind, the court concludes for several reasons that Valencia would not have been entitled to withdraw his plea based on either the Government's advocacy for a higher drug quantity or its objection to an acceptance reduction. First, unlike in either Palladino or Habbas, Valencia did not sign the plea agreement containing the Pimentel estimate; thus, Valencia had no "reasonable expectation" that the Government's estimate was in any way binding.[7] Palladino, 347 F.3d at 34. Second, as in Habbas and unlike in Palladino, the

---

[7] Indeed, the fact that Valencia did not sign the plea agreement with the Government might be dispositive on its own. It is not clear whether the reasoning in Palladino and its progeny applies only to Pimentel estimates made

Government made no assurance that it would not advocate for a sentence higher than its estimate. See Habbas, 537 F.3d at 270, 272 n.1; cf. Palladino, 347 F.3d at 33. Third, unlike in Palladino, the Government's argument for a higher drug quantity and its objection to an acceptance reduction were not based on "information that was known to it at the time of the agreement." Palladino, 347 F.3d at 33. According to the Government (see Gov't Opp'n at 24), it was not until around the time of the Fatico hearing that the Government learned—based on information provided by cooperating witness James Cifuentes several months after Valencia's plea—that Valencia was responsible for over thirty kilograms of heroin; and it was based on this information that the Government concluded that Valencia had not been truthful in his first proffer to the Government and was therefore not entitled to an acceptance reduction (A 64-67). Thus, as in Habbas, there is nothing in the record to suggest that the Government's Pimentel estimate was made in bad faith. See Habbas, 537 F.3d at 271. Indeed, the record contains every indication that it was *Valencia* who acted in bad faith by drastically understating his role and the extent of his drug activities at his first proffer meeting with the Government; in contrast with this proffer, Valencia later admitted—and still does not appear to dispute—that he had extensive involvement in the distribution of over 120 kilograms of heroin. (A 85-86, 96.)

Perhaps most importantly, to the extent that there is ambiguity as to whether Palladino or Habbas controls Valencia's case, that ambiguity only shows that counsel's decision not to seek withdrawal of Valencia's guilty plea did not "f[a]ll below an objective standard of reasonableness." Strickland, 466 U.S. at 688. And even if counsel had believed that Valencia had good grounds for withdrawal of his guilty plea (a belief not held by this court), counsel could

---

in signed plea agreements or whether this reasoning can be extended to sentencing estimates more generally. The court need not decide this issue, however, and will assume for the purposes of this case that the Government's departure from a Pimentel estimate might in some circumstances provide grounds for withdrawal of a plea even in the absence of a signed plea agreement. Of course, the fact that Valencia did not sign the plea agreement is at least *significant* (even if not dispositive) to Valencia's reasonable expectations about the Government's estimate.

have reasonably concluded that the potential downside of withdrawing the plea and moving to trial outweighed its benefits. Cf. Greiner, 417 F.3d at 319 (a court must "not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential downside" (internal quotation marks omitted)). Thus, counsel was not ineffective for failing to seek withdrawal of Valencia's guilty plea.

### C. Failure to Object to the Government's Argument Regarding Quantity

Valencia's third argument is that his counsel was ineffective because he failed to object when the Government argued for a higher drug quantity than the quantity to which Valencia had admitted at his plea hearing. (Pet. at 14-22.) The basis of Valencia's claim is somewhat unclear given that (1) counsel *did* in fact vigorously cross-examine the Government's cooperating witnesses at the Fatico hearing, including with regard to their testimony as to drug quantity; and (2) Valencia eventually admitted (and still does not appear to dispute) that his crime involved at least thirty kilograms of heroin. (A 87.) But in any event, Valencia's claim fails largely for reasons that have already been discussed. To the extent Valencia claims that counsel should have objected on the grounds that Valencia had a right under Apprendi to have drug quantity proven to a jury beyond a reasonable doubt (see Pet. at 22; Pet. Reply at 2), this claim lacks merit because, as discussed in Part III.A, Valencia's Apprendi rights were no longer at issue once he admitted that his crime involved at least one kilogram of heroin. And to the extent Valencia claims that counsel should have objected on the grounds that the Government had improperly deviated from its Pimentel estimate (see Pet. at 17), this claim fails because, as discussed in Part III.B, the Government was not obligated to adhere to that estimate. Valencia does not provide any other ground on which counsel should have objected, and the court is not aware of any.

Thus, counsel was not ineffective for failing to object to the Government's argument for a higher drug quantity.

### D. Recommendation to Make a Full Proffer to the Government

Finally, Valencia argues that his counsel was ineffective because he advised Valencia to give a full proffer to the Government regarding his crime after pleading guilty rather than admitting only to the bare elements of the crime, as he did at his plea hearing. (Pet. at 28-30; Pet. Reply at 3.) The court disagrees.

Valencia argues that, had he not given the proffer, he would have had a lower base offense level (based on a lower drug quantity) and would have received an acceptance reduction. (Pet. at 30.) But regardless of whether that is correct in hindsight—which is not necessarily so—it does not make counsel's assistance ineffective. Counsel could reasonably have concluded that it was in Valencia's best interests to give an additional proffer in the course of seeking a Guidelines safety valve—which would have entitled him to be sentenced below the ten-year statutory minimum and to a two-level reduction—in spite of the risk that such a proffer would jeopardize his acceptance reduction. Cf. Greiner, 417 F.3d at 319. Indeed, it was only because Valencia lied at his original proffer in 2006, and was later exposed for this lie (A 85), that he lost his acceptance reduction (A 284 (court's statement at sentencing hearing that Valencia was not entitled to an acceptance reduction because he "gave an original proffer that was not truthful")). Unless counsel *knew* that the facts Valencia provided at his initial proffer were false, he had every reason to believe that seeking a safety valve through an additional proffer would more likely benefit Valencia than harm him. Valencia does not suggest that counsel had any such knowledge. Thus, he has not established ineffective assistance on this basis.

## IV. CONCLUSION

For the foregoing reasons, Valencia's Petition for Writ of Habeas Corpus is DENIED. Because the court is capable of resolving Valencia's claims based on the record and the parties' submissions, Valencia's request for an evidentiary hearing, pursuant to 28 U.S.C. § 2255(b), is DENIED. See United States v. Sessa, Nos. 92-CR-351 (ARR) & 97-CV-2079 (ARR), 2011 WL 256330, at *57 (E.D.N.Y. Jan. 25, 2011). And because Valencia has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue. See 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York  
June 12, 2012

NICHOLAS G. GARAUFIS  
United States District Judge